UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA G. PIERCE,

    Plaintiff,

v.                                      Case No. 1:21-cv-783
                                        Hon. Jane M. Beckering

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for benefits on November 8, 2019, alleging a disability onset date of October 25, 2019. PageID.42. Plaintiff identified her disabling conditions as a learning disability, back problems (arthritis and spurs), depression, knee problems (arthritis, spurs, and no cartilage), weight, and degenerative disc disease in the back. PageID.328. Plaintiff completed the 12th grade and had past relevant employment as a home health aide. PageID.51, 329. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 26, 2021. PageID.42-53. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 25, 2019, and meets the insured status requirements of the Social Security Act through December 31, 2024. PageID.44. At the second step, the ALJ found that plaintiff has severe impairments of: obesity; osteoarthritis of the knees; moderate to severe foraminal stenosis at L4-5; depression/anxiety; and neurodevelopmental/intellectual disorder. *Id*. At the third step, the ALJ found that since the alleged onset date of disability, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.45.

The ALJ decided at the fourth step that:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but can never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; only frequently balance with a hand-held assistive device; with no exposure to hazards; in simple, routine, repetitive work.

PageID.47. At this step, the ALJ also found that plaintiff was unable to perform any past relevant work. PageID.51.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.52-53. Specifically, the ALJ found that plaintiff could perform the requirements of document preparer

4

(2,000,000 jobs), call out operator (26,000 jobs), and final assembler (222,000 jobs). *Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 25, 2019 (the alleged onset date) through January 26, 2021 (the date of the decision). PageID.53.

### III.    DISCUSSION

Plaintiff set forth two issues on appeal:

**A.    The ALJ's Residual Functional Capacity (RFC) is not supported by substantial evidence.**

Plaintiff's issue, "(1) The ALJ Failed to Create an Accurate Residual Functional Capacity Assessment at Step Five", appears to conflate the issue of whether the ALJ's RFC determination performed at Step Four is supported by substantial evidence, with the issue of whether the ALJ posed an appropriate hypothetical question to the vocational expert (VE) at Step Five. *See* Plaintiff's Brief (ECF No. 16, PageID.669). While plaintiff nominally refers to the VE's testimony, the error argued in the brief is that the ALJ failed to develop an appropriate RFC at Step Four.[1]

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368

---

[1] *See* Plaintiff's Brief (ECF No. 16, PageID.669-670) (footnote omitted):

"In his RFC assessment, the ALJ determined that the Plaintiff has the residual functional capacity to perform sedentary work with additional limitations of: never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; only frequently balance with a hand-held assistive device; no exposure to hazards; and simple, routine, repetitive work. (ECF No. 7-2, PageID.47). This assessment falls short of including the entirety of Plaintiff's documented limitations. In making a decision, the ALJ has a duty to include those limitations in his RFC assessment, which is defined as 'the most you can still do despite your limitations.' 20 C.F.R. § 416.945."

5

F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted). Plaintiff contends that the ALJ's RFC determination is flawed because: the ALJ failed properly evaluate plaintiff's use of a cane; the ALJ failed to provide accommodations for plaintiff while sitting; and the ALJ failed to consider the side effects of plaintiff's medications.

### 1. Plaintiff's use of a hand-held assistive device (cane)

Plaintiff's claim is based in large part on the opinions expressed by her medical provider, Lori A. Smith, PA-C (Exh. 6F/1, PageID.464). In evaluating medical opinions, the most important factors which the ALJ considers are "supportability" and "consistency":

> [W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).[2] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. §§ 404.1520c(b)(3) and 416.920c(b)(3) (internal citations omitted).

In addition, the applicable regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered

---

[2] The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1).

The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(1).

all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, -- F. Supp. 3d. --, 2021 WL 3702170 at *4 (E.D. Mich. Aug. 13, 2021). Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

At an appointment on November 5, 2019, PA-C Smith evaluated plaintiff and set out the following plan:

> After discussion of the diagnosis and treatment options, it was elected to proceed with conservative treatment. Proceed with physical therapy, OTC NSAIDS, rest, ice compression, and elevation and assisted device, cane. Risks and complications of drug therapy were discussed. Discussed cortisone and viscoelastic injections and weight loss.

PageID.456-459 (emphasis omitted). In a "to whom it may concern" letter dated that day, PA-C Smith stated the following restrictions:

> This person was seen in our office for medical consultation on the above date. Please allow Amanda to return to work beginning 11/06/19 with the following restrictions: please allow Amanda to use a cane as needed, allow her to sit as needed, limiting walking and standing as much as possible (primarily sedentary duties if possible). These restrictions are likely to be permanent.

7

PageID.464.

The ALJ found that PA-C Smith's opinion was somewhat persuasive:

The statement's [sic] from claimant's provider are somewhat persuasive (Exhibit 6F at 1). *The provider indicated that claimant should be permitted to use a cane and should have primarily sedentary duties* (Exhibit 6F at 1). *I note that this was supported with the contemporaneous records* (*See* Exhibit 5F at 3). However, the totality of the evidence received by [sic] I am consistent with somewhat different, more precise functional limitations. For example, the record indicates she had a normal gait (Exhibit 1F at 6, 27). However, other records indicate an antalgic gait (Exhibit 4F at 5; Exhibit 8F at 4). Claimant had normal (5/5) motor strength (Exhibit 6F at 5; Exhibit 17F at 5). She had normal motor functioning (Exhibit 10F at 7). She had no weakness (Exhibit 18F at 13, 16). Other records indicate decreased strength (Exhibit 10F at 7). Based on this evidence, I find that claimant has the residual functional capacity to perform sedentary work except she can never climb ladders, ropes, and scaffolds, and occasionally climb ramps and stairs. *She can frequently balance with a hand-held assistive device.* Claimant had normal deep tendon reflexes (Exhibit 4F at 5, 8; Exhibit 17F at 4). Her sensation was intact (Exhibit 4F at 5; Exhibit 6F at 5; Exhibit 15F at 9; Exhibit 17F at 5). At times, she had full range of motion (Exhibit 1F at 6, 27). However, other records indicated decreased/painful range of motion with crepitus (Exhibit 4F at 4, 8). Accordingly, I find that claimant can occasionally stoop, kneel, crouch, or crawl. Given claimant's ongoing allegations of pain, and the possible sedating effects of pain medication, I find there should be no exposure to hazards.

PageID.50 (emphasis added).

The ALJ found the prior administrative medical findings to be persuasive:

The prior administrative medical findings of the state agency medical consultants are persuasive (Exhibit 1A; Exhibit 2A; Exhibit 5A; Exhibit 6A). The state agency medical consultants found that claimant retained the capacity for sedentary work with postural and environmental limitations. I note that this was supported with an explanation. What is more, these findings are consistent with the totality of the evidence received at the hearing level. For example, the record indicates she had a normal gait (Exhibit 1F at 6, 27). However, other records indicate an antalgic gait (Exhibit 4F at 5; Exhibit 8F at 4). Claimant had normal (5/5) motor strength (Exhibit 6F at 5; Exhibit 17F at 5). She had normal motor functioning (Exhibit 10F at 7). She had no weakness (Exhibit 18F at 13, 16). Other records indicate decreased strength (Exhibit 10F at 7).  Based on this evidence, I find that claimant has the residual functional capacity to perform sedentary work except she can never climb ladders, ropes, and scaffolds, and occasionally climb ramps and stairs. *She can frequently balance with a hand-held assistive device.* Claimant had normal deep tendon reflexes (Exhibit 4F at 5, 8; Exhibit 17F at 4). Her sensation was intact (Exhibit 4F at 5; Exhibit 6F at 5; Exhibit 15F at 9; Exhibit

> 17F at 5). At times, she had full range of motion (Exhibit 1F at 6, 27). However, other records indicated decreased/painful range of motion with crepitus (Exhibit 4F at 4, 8). Accordingly, I find that claimant can occasionally stoop, kneel, crouch, or crawl. Given claimant's ongoing allegations of pain, and the possible sedating effects of pain medication, I find there should be no exposure to hazards.

PageID.50-51 (emphasis added).

The gist of plaintiff's argument is (1) that her use of a cane is medically necessary, and (2) that the ALJ did not provide precise functional limitations with respect to her use of the cane. As discussed, PA-C Smith suggested that plaintiff be allowed to use the cane as needed. Plaintiff gave a range of testimony regarding her use of a hand-held assistive device, stating that she uses the cane: "quite a bit"; "[e]very time I walk 'cause if I, I don't have it, I can't walk"; and "[w]hen I get up I use it". PageID.84-85. However, plaintiff also testified that she leaves the cane in the car when she goes to work, "[b]ecause I don't want them to think that I can't do the job then lose, lose it." PageID.85. Plaintiff's testimony appears consistent with PA-C Smith's opinion that she should be allowed to use the cane as needed.

As discussed, the ALJ's RFC limited plaintiff's use of the cane to "frequently balance." PageID.47. For purposes of Social Security disability claims, the term "frequent" means "occurring from one-third to two-thirds of the time." *See* SSR 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983). The ALJ's limitation of using an assistive device for "balance" is a functional limitation which appears as an example in Social Security Ruling (SSR) 96-09p:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

SSR 96-9p, 1996 WL 374185 at *7 (July 2, 1996) (footnote omitted).

The record is unclear as to how the ALJ developed the RFC that plaintiff needed to use a cane frequently for balance. This limitation does not arise from any opinion, medical record, or testimony in the record. Based on PA-C Smith's letter, the cane was prescribed for use "as needed" and plaintiff's testimony appears to be consistent with this use. Given this record, the ALJ's determination that plaintiff should be allowed to use the cane to "frequently balance" is not supported by substantial evidence. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's need to use a hand-held assistive device.

### 2. Plaintiff's need for a sit/stand option and leg elevation

As discussed, PA-C Smith stated that an employer should "allow her to sit as needed, limiting walking and standing as much as possible (primarily sedentary duties if possible)." PageID.464. While plaintiff also refers to leg elevation, PA-C Smith's opinion did not include that limitation.

PA-C Smith indicated that plaintiff should be limited to "primarily sedentary duties if possible." The regulations define sedentary work as follows,

10

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a).

The ALJ did not address PA-C Smith's restriction that plaintiff should be able to sit as needed and have limited walking and standing. When considering the combination of plaintiff's obesity and her other impairments,[3] the ALJ found that "the reduction to less than the sedentary exertional level is appropriate." PageID.49. The ALJ also found that plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." PageID.47. These two statements regarding sedentary work appear inconsistent, with the first statement finding that plaintiff's exertional ability is "less than sedentary," and the second statement finding that plaintiff's exertional ability is "sedentary."

The Court concludes that the ALJ's RFC determination is not supported by substantial evidence. First, the ALJ appears to give conflicting findings as to whether plaintiff can perform sedentary work. Second, while the ALJ acknowledged that plaintiff needs a cane and may not be able to perform all of the requirements of sedentary work, he did not address PA-C Smith's restriction which indicates the need for a sit/stand option with limited standing and walking, Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate whether plaintiff can perform sedentary work and whether she requires a sit/stand option.

---

[3] The ALJ summarized plaintiff's testimony that "She is 5 foot and 3 inches tall. She weighs 343 pounds." PageID.47.

### 3. Medication side effects

Next, plaintiff contends that the RFC evaluation is flawed because the ALJ failed to consider the side effects of her medications. Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Commissioner of Social Security*, 114 Fed. Appx. 662, 665-66 (6th Cir. 2004) (where plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians). Here, the medical records reflect that on June 8, 2020, plaintiff complained of dizziness from Cymbalta. PageID.549-550. That day, the health care provider prescribed a smaller dose. PageID.550. While the ALJ did not specifically identify this record, he considered medication side effects, stating in two different parts of the decision that "[g]iven claimant's ongoing allegations of pain, and the possible sedating effects of pain medication, I find there should be no exposure to hazards." PageID.50, 51. Accordingly, this claim of error should be denied.

### B. The ALJ who presided over Plaintiff's 2021 hearing was not properly and validly appointed under the Constitution when he made his decision. *Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (2020) and *Collins v. Yellen*, 141 S.Ct. 1761 (2021).

Finally, plaintiff contends she is entitled to a remand of her case on "appointment clause grounds" because the ALJ in her case adjudicated her disability claim "only by delegation of authority from a Commissioner who held no constitutionally valid legal authority which he could delegate." Plaintiff's Brief (ECF No. 16, PageID.675, 677). In her brief, plaintiff states:

> The Commissioner of SSA, by statute, serves for six years, and anyone serving in that office cannot be removed by the President except for cause ("neglect of duty or malfeasance in office"). 42 U.S.C. § 902(a)(3). This structure is constitutionally invalid as it violates separation of powers, interfering with the President's authority to supervise and remove executive branch officials. *See Collins v. Yellen*, 141 S.Ct. 1761 (2021); Office of the Legal Counsel, U.S. Department of Justice (DOJ), Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021

WL 2981542 (July 8, 2021) ("OLC Op."). Thus, ALJ Jones adjudicated the Plaintiff's disability claim only by delegation of authority from a Commissioner who held no constitutionally valid legal authority which he could delegate.

*Id*. at PageID.674.  Plaintiff continues,

> This case involves a structural constitutional claim implicating separation of powers concerns, so an individual need not show direct prejudice; instead, such harm is presumed.  Even if such proof of harm were required, Plaintiff has proven harm here. This separation of powers challenge involves government actors' exercise of power that they did not validly possess, so no showing of "cause" is required.

*Id*. at PageID.675-676.

Plaintiff's claim is without merit.  In rejecting an "appointments clause" argument raised in a Social Security Appeal, one court explained:

> The Court first finds that Commissioner's final decision was not constitutionally defective.  Recently, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm.  In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void."  *Id*. at 1787,1788 n. 23.  In this case, Plaintiff, as in *Collins*, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment and offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits.  The Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision.  However, *Collins* expressly rejects this view. *Id*.  Therefore, the final decision of the ALJ is not constitutionally defective.

*Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141 at *3 (W.D.N.C. Oct. 28, 2021).[4]

---

[4] In this regard, defendant points out that,

"District courts across the country have rejected remands predicated on the Social Security Act's removal restrictions for lack of compensable harm.  *See, e.g., Jones v. Kijakazi*, No. 20-1074-SRF, 2022 WL 1016610, at *12 (D. Del. Apr. 5, 2022); *Michelle D. v. Kijakazi*, No. 21-CV-1561, 2022 WL 972280, at *6 (N.D. Ill. Mar. 31, 2022); *Michael H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1466-DB, 2022 WL 768658, at *15-18 (W.D.N.Y. Mar. 14, 2022); *Tucker v. Kijakazi*, No. 21-60943, 2022 WL 742744, at *2-3 (S.D. Fla. Mar. 11, 2022); *Burrell v. Kijakazi*, No. 21-3662,

13

Plaintiff has offered no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of her applications for benefits. Accordingly, this claim of error should be denied.

### IV.     RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) re-evaluate plaintiff's need to use a hand-held assistive device, (2) re-evaluate whether plaintiff can perform sedentary work, and (3) re-evaluate whether plaintiff requires a sit/stand option.

Dated:  May 24, 2022                                    /s/ Ray Kent
                                                        RAY KENT
                                                        United States Magistrate Judge

---

2022 WL 742841, at *5 (E.D. Pa. Mar. 10, 2022); *Platt v. Comm'r of Soc. Sec.*, No. 20 Civ. 8382 (GWG), 2022 WL 621974, at *5-6 (S.D.N.Y. Mar. 3, 2022); *Juliana Jolean A. v. Kijakazi*, No. 5:20-cv-1268, 2022 WL 595361, at *1-5 (N.D.N.Y. Feb. 28, 2022); *Jason V. v. Comm'r of Soc. Sec.*, No. C21-5527-SKV, 2022 WL 575703, at *5-7 (W.D. Wash. Feb. 25, 2022); *Colbert v. Comm'r of Soc. Sec.*, No. 5:20-CV-2234, 2022 WL 556738, at *2 (N.D. Ohio Feb. 24, 2022); *Kathy R. v. Kijakazi*, No. 2:21-cv-00095-JDL, 2022 WL 42916, at *3-5 (D. Me. Jan. 5, 2022), *adopted by* 2022 WL 558359 (D. Me. Feb. 24, 2022); *Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022); *Taffe v. Kijakazi*, No. 20-CV-1974-WVG, 2022 WL 542884, at *9-11 (S.D. Cal. Feb. 22, 2022); *Kowalski v. Kijakazi*, No. 3:20-CV-01783, 2022 WL 526094, at *9-12 (M.D. Pa. Feb. 22, 2022); *Twila D.B. v. Kijakazi*, No. 2:20-cv-6304-AFM, 2022 WL 425936, at *2-4 (C.D. Cal. Feb. 10, 2022); *Pepper v. Kijakazi*, No. 6:20-cv-4159, 2022 WL 391577, at *2-3 (D.S.C. Feb. 9, 2022); *Rhonda W. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5931, 2022 WL 390802, at *6-8 (S.D. Ohio Feb. 9, 2022); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *Carla D. v. Kijakazi*, No. 2:20-cv-361-LRS, 2022 WL 264460, at *1-3 (E.D. Wash. Jan. 27, 2022); *Ramos v. Comm'r of Soc. Sec.*, No 1:20-cv-01606-EPG, 2022 WL 105108, at *2-4 (E.D. Cal. Jan. 11, 2022); *Nudelman v. Comm'r of Soc. Sec.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *10-13 (D. Ariz. Jan 11, 2022); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *3-5 (D.N.J. Jan. 7, 2022); *Hutchens v. Kijakazi*, No. 1:20CV1124, 2021 WL 5834409, at *6-14 (M.D.N.C. Dec. 9, 2021), *adopted by* ECF No. 24 (M.D.N.C. Jan. 5, 2022); *Olimpiada v. Kijakazi*, No. 2:21-cv-00196-CLB, 2022 WL 19678, at *4-5 (D. Nev. Jan. 3, 2022); *Benavidez v. Kijakazi,* No. 20-990, 2021 WL 6062715, at *4 (D.N.M. Dec. 22, 2021); *Wybo v. Kijakazi,* No. 20-518, 2021 WL 6052423, at *4 (W.D. Ky. Dec. 21, 2022); *Nathaniel H. v. Kijakazi*, No. 6:19-cv-01280-AA, 2021 WL 5921377, at *4-6 (D. Or. Dec. 15, 2021); *Clark v. Kijakazi*, No. 20-cv-1363, 2021 WL 5905942, at *3-4 (E.D. Wis. Dec. 14, 2021); *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *18-19 (D. Neb. Nov. 15, 2021); *Robinson v. Kijakazi,* No. 1:20-cv-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021)."

Defendant's Brief (ECF No. 17, PageID.686, fn. 3).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).